## NEWTON v. THE STATE.

1. INSTRUCTIONS: *Should be on all the evidence.*·
   Instructions should not be based upon isolated facts or only part of the evidence, but should be so framed that all parts of the evidence should be considered and weighed by the jury.
2. NEW TRIAL: *For newly discovered evidence.*
   A new trial will not be granted on the ground of newly discovered. evidence where it appears that the evidence was known to the party. before the trial and no good reason is shown for not producing it..

APPEAL from *Clark* Circuit Court.
Hon. H. B. STUART, Circuit Judge.

### STATEMENT.

At the January term of the Circuit Court of Clark county,.. Eli Newton was indicted for larceny of two steers, the prop- erty of Lewis Speaks; one a red and white spotted steer, two and a half years old, marked with a hole in each ear and split in the right ear; the other, a dun steer, two years. old, with smooth crop in the right ear and over half crop in, the left ear. .

Upon the trial, the prosecuting witness, Lewis Speaks, testified that hearing that the defendant was killing stock, he went to look after his own stock; found an old cow but none of his yearlings; missed his red and white spotted steer, two and a half years old, crumpled horns. Went then to the beef market and told Horner to look out for cattle in witness' mark, and gave him the mark. Horner said there was a hide there then, of that mark. Mr. Ballentine was in beef wagon, and he and witness looked and found the hide in his mark. It was red and white spotted hide with ears on it in witness' mark. They told witness the horns were crumpled. Witness also saw a yellow hide and told Ballentine it was his. He knew the yellow yearling—bought it of John Taylor—it was dun all over alike. It had been half cut and had one seed. Defendant knew the cattle—had told witness about seeing them before then, and that they were doing very well. After witness saw the hides he saw the defendant, and he said he had not seen the steers for some time. Witness told him he had found the hides and would make the man smoke who got them. Defendant replied he had been having some stock killed and may be there was some mistake; that he would pay witness for them, and prosecute him for saying he stole them. One of the steers was worth eight dollars, the other seven. Witness' mark was hole in each ear and split in the right. Witness told defendant that the yellow hide was witness'. Defendant said Alex. Reed got the yearling from Burton, or some such name. Witness did not know the marks of the dun—he bought him. The defendant never claimed to witness that he had any such steer as the red and white one. Defendant knew the steers—saw them in the old Johnson field below town. He did not know the dun was witness'. Defendant begged witness to take pay for the steers after the writ issued for him, but said they were not witness',

but he would pay for them for satisfaction. Witness knew the yellow hide by the flesh marks. The steer was raised in witness' pen. Ballentine told witness he got it from defendant.

Taylor, witness for the State: I sold to Lewis Speaks a light dun steer. It belonged to Lucy Miller; was in my control. It run on the old Johnson field below town. Marked it with crop off one ear and over half crop in the other; had but one seed; saw the head and hide at Ballentine's; think it the same I sold to Speaks. Cannot say the defendant was present when the hide was examined; don't think he was. The butcher admitted that the steer had but one seed.

George Dunn, for the State: I am thirteen years old. The defendant got me to help him to drive a yellow yearling to Ballentine's pen. I told him it looked like Aunt Lucy Miller's yearling. He gave me a dime for helping him to drive it up. He told me he got it from some one whose name I forget. We drove it up in day time to Mr. Ballentine's slaughter pen.

Homer Long, for State: I recollect Lewis Speaks coming to claim hides. He claimed the hide of a red and white spotted steer, it was in his mark and was a crumply horn steer. Mr. Crow and myself drove him up from description given by the defendant from the old Johnson field below town. Speaks knew the hide as soon as he saw it. Don't know who brought the dun steer—he had one small seed.

Ballentine, for State: I bought several cattle from defendant. Crow and Long went for the spotted steer from description given by the defendant. I think I sent Crow and Homer to see defendant. He was sick and not able to get up stock; paid him some money at his house; he was in bed. Bought the dun steer from him, but don't know who put him in my pen.

Dave Dickerson, for the defendant: I know both Speaks and the defendant. Defendant had a little dun bull about the color of saw dust. The last I saw of him he was in the Johnson field below town in the fall of 1879. I know defendant bought cattle of Reed and Reed bought of Burton. Think Burton bought of Mr. Tyler.

Washington Kellogg, for the defendant: I knew the defendant's cattle, and was present when Reed pledged a little dun bull, called the Burton little dun bull, to the defendant for ten dollars. I knew it when a calf, afterwards in the cane and after that in the old field.

Among other instructions asked by the defendant was the following, which the court refused:

"Second, If the jury find from the evidence, that the defendant was the owner and possessor of two steers, of the same description as those charged in the indictment to have been stolen, and that he was, or had been sick for a long time, and sold said steers in the woods, and by description only, and without seeing them, they may acquit him of the charge of larceny; notwithstanding the jury may believe that the steers killed by Ballentine were the property of Lewis Speaks."

The jury found the defendant guilty, as charged in the indictment, and assessed his punishment at one year in the penitentiary, and he filed a motion for new trial, assigning for causes:

*First*. Verdict contrary to law and evidence.

*Second.* "Because the defendant has discovered important evidence in his favor since the verdict was rendered, to wit: He can prove by Thomas Heard, that late in the fall of 1878, he sold to the defendant a cow and calf. The calf was a red and white spotted bull calf, unmarked.

He can prove by Charles and Martha Reed that he continued to own and control what was known as the Heard

little steer, up to the time of selling it to Ballentine. He can prove by Iasiah Burton that he sold to Alex. Reed a dun bull yearling. He can prove by Charles Reed that he has exercised ownership over the same little dun bull up to the time it was sold to Ballentine."

*Third.* Error of the Court in refusing his second instruction.

With the motion were filed affidavits of the witnesses mentioned in it, corroborating its statement of their testimony. The motion was overruled, and he was sentenced in accordance with the verdict, and filed his bill of exceptions and has obtained an appeal to this court.

*C. B. Moore, Attorney-General,* for the State.

The evidence for the State was vastly preponderating, abundantly so to sustain the verdict.

There was no allegation or pretence that the newly dis covered evidence was not attainable, or could not have been discovered by reasonable effort or diligence *before the trial.*

OPINION.

HARRISON, J. The court very properly refused to give the jury the second instruction asked by the defendant. Instructions should not be based on isolated facts, or only part of the evidence, but should be so framed that all parts of the evidence should be considered and weighed by the jury. *Proff. on Trial by Jury, sec.* 319 ; *Thomp. on Charging the Jury, sec.* 71 ; *Bush* v. *The State, ante* 215 ; *Winter* v. *Bandel et al.,* 30 *Ark.,* 383. It did not necessarily follow, because the defendant had cattle of like description to the steers owned by Speaks, and sold them by description, as they run at large, that the evidence which tended to prove, that knowing they were not his own, he himself drove and delivered one of Speaks', to the purchaser, at his slaughter

pen, and that by claiming it as his own and as one of those he had sold, induced the purchaser, or his servants, to drive the other there, could not have been true.

A new trial will not be granted on the ground of newly discovered evidence, where it appears that the evidence was known to the party before the trial, and no good reason is shown for not procuring it. *Holeman* v. *The State*, 13 *Ark.*, 105 ; *Bourland* v. *Skimne*, 11 *Ark.*, 671 : *Fikes* v. *Bentley*, *Hemp.* 61.

The facts which the defendant alleged he would be able to prove, were, if true, within his own knowledge, and he could as easily before as after the trial have found the witnesses.

There was no want of evidence to sustain the verdict.

The judgment is affirmed.


EAKIN, J. Conceding that no technical error exists in this case, I am dissatisfied with the proceedings and the result, and would prefer, for safety and in favor of liberty, to direct a new trial. The Court on several occasions has done this, where there has been no specific error upon any one point, sufficient of itself to justify reversal.

It is evident that the main defense rested upon this point ; that the defendant was sick and infirm, and sold the cattle in the woods by description ; that he had cattle of like description ; and that if he meant to sell his own, and other cattle of like description had been taken from the range, in place of them, by mistake, or by the vendee or his servants, without defendant's special directions, the case would not be one of larceny. There was evidence upon that point before the jury, and they should have been instructed with regard to it in some way, to have enabled them to act intelligently *upon that particular point*. The second instruction was so intended. It was not framed however, so as to be strictly

·correct. The Court refused it absolutely, without propos-ing to modify it, or to give any upon that point in lieu ·of it. I cannot say that the judge was obliged to do so, but I think it would have been better. As it was, the jury ·went out wholly uninstructed on the point.

The evidence is brought up by the bill of exceptions in ·a very confused condition, and perhaps is not as clear to us as it was to the jury. Still it is apparent that a good deal of it was hearsay and incompetent— admitted without objection. That was not error, but it made it more important that the jury should be well instructed. The evidence, as it appears in the transcript, does not make on my mind, that clear and undoubting assurance of guilt, which it is important that a jury should have, although I would not make this an objec-tion to a verdict on full and clear instructions; yet I can-not resist the apprehension in this case, that it might have ·been different if the second instruction, with a slight ·modification, had been given.